UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WILLIE G.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 1:20-cv-02634-DLP-JRS |
| | ) |
| KILOLO KIJAKAZI, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Plaintiff Willie G. requests judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his application for Social Security Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. *See* 42 U.S.C. §§ 423(d). For the reasons set forth below, the Court hereby **AFFIRMS** the ALJ's decision denying the Plaintiff benefits.

### I.  PROCEDURAL HISTORY

On January 23, 2013, Willie filed an application for Title II DIB and Title XVI SSI. (Dkt. 18-5 at 2-15, R. 217-230). Willie's application alleged disability resulting from bronchitis, asthma, sinus disorder, carpal tunnel syndrome in both wrists, and sleep apnea. (Dkt. 18-6 at 7, R. 264). The Social Security Administration

---

[1] In an effort to protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has adopted the recommendations put forth by the Court Administration and Case Management Committee of the Administrative Office of the United States Courts regarding the practice of using only the first name and last initial of any non-government parties in Social Security opinions. The Undersigned has elected to implement that practice in this Order.

1

("SSA") denied Willie's claim initially on April 17, 2013, (Dkt 18-4 at 2-9, R. 161-168), and on reconsideration on August 13, 2013. (Id. at 11-16, R. 170-75). On October 1, 2013, Willie filed a written request for a hearing, which was granted. (Dkt. 18-4 at 17-27, R. 176-86). On December 3, 2014, Administrative Law Judge ("ALJ") Rebecca LaRiccia conducted a hearing, where Willie appeared in person and vocational expert, James Breen, appeared telephonically. (Dkt. 18-2 at 27-56, R. 26-55). On February 12, 2015, ALJ LaRiccia issued an unfavorable decision finding that Willie was not disabled. (Dkt. 18-2 at 12-21, R. 11-20). Willie appealed the ALJ's decision, and, on July 19, 2016, the Appeals Council denied Willie's request for review, making the ALJ's decision final. (Dkt. 18-2 at 2-4, R. 1-3). Willie sought judicial review of ALJ LaRiccia's decision in this Court on September 23, 2016. (Dkt. 18-9 at 4, R. 655). The matter was transferred to the Northern District of Indiana and, on October 26, 2018, Magistrate Judge Paul R. Cherry reversed and remanded the matter back to the Agency for further proceedings. (Id; Dkt. 18-9 at 7-22, R. 658-673).

On remand, the Appeals Council assigned the matter to a new ALJ, Ronald T. Jordan, for further proceedings on February 25, 2019. (Dkt. 18-9 at 25-27, R. 676-78). ALJ Jordan conducted the remand hearing on September 27, 2019. (Dkt. 18-8 at 33-87, R. 598-652). Willie appeared in person and vocational expert, George E. Parsons, and medical expert, Dr. Allan N. Levine, appeared telephonically. (Id.). On October 21, 2019, ALJ Jordan issued an unfavorable decision finding that Willie was not disabled. (Dkt. 18-8 at 11-23, R. 576-588). Willie appealed the ALJ's

decision, and, on August 12, 2020, the Appeals Council denied Willie's request for review, making the ALJ's decision final. (Dkt. 18-8 at 2-4, R. 567-69). Willie now seeks judicial review of the ALJ's decision denying benefits pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.　STANDARD OF REVIEW

Under the Act, a claimant may be entitled to DIB and SSI only after he establishes that he is disabled. To prove disability, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant's impairments must be of such severity that he is not able to perform the work he previously engaged in and, based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The SSA has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520(a)[2]. The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial

---

[2] The Code of Federal Regulations contains separate, parallel sections pertaining to disability benefits under the different titles of the Social Security Act. The parallel sections – applying to disability insurance benefits and supplemental security income benefits – are verbatim and make no substantive legal distinction based on the benefit type.

> gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 404.1520; *Briscoe*, 425 F.3d at 352. If a claimant satisfies steps one and two, but not three, then he must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995); *see also* 20 C.F.R. § 404.1520 (A negative answer at any point, other than step three, terminates the inquiry and leads to a determination that the claimant is not disabled.).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at step four to determine whether the claimant can perform his own past relevant work and if not, at step five to determine whether the claimant can perform other work in the national economy. *See* 20 C.F.R. § 404.1520(iv).

The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id.* The Commissioner must then establish that the claimant—in light of his

age, education, job experience, and residual functional capacity to work—is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f).

The Court reviews the Commissioner's denial of benefits to determine whether it was supported by substantial evidence or is the result of an error of law. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Evidence is substantial when it is sufficient for a reasonable person to conclude that the evidence supports the decision. *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is not whether Willie is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

In this substantial evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Nevertheless, the Court must conduct a critical review of the evidence before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, he must build an "accurate and logical bridge from the evidence to his conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford*, 227 F.3d at 872.

## III. BACKGROUND

### A. Factual Background

Willie was sixty years old as of his alleged onset date of September 27, 2012. (Dkt. 18-5 at 2-15, R. 217-230). Willie is a college graduate, obtained a master's degree in Business Administration, and has specialized job training in wardrobe consulting and risk management. (Dkt. 18-6 at 8, R. 265; Dkt. 18-8 at 46-47, R. 611-12). He has past relevant work as wardrobe consultant, substitute teacher, retail sales associate and manager, convenience store associate manager, and human resources director at a mental health care facility. (Dkt. 16-6 at 8, R. 265).

### B. ALJ Decision

In determining whether Willie qualified for benefits under the Act, the ALJ employed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520(a) and 416.920(a) and concluded that Willie was not disabled. (Dkt. 18-8 at 11-23, R. 576-88). At Step One, the ALJ found that Willie had not engaged in

substantial gainful activity since his alleged onset date of September 27, 2012. (Id. at 14, R. 579).

At Step Two, the ALJ found that Willie has severe medically determinable impairments of asthma, chronic obstructive pulmonary disease (COPD) or bronchospastic airway disease; osteoarthritis of the knee; bilateral carpal tunnel syndrome; obesity; gout; history of congestive heart failure with mild concentric left ventricular hypertrophy, cardiomegaly, and tricuspid regurgitation; peripheral edema; peripheral arterial disease; and diabetes mellitus. (Dkt. 18-8 at 14, R. 579). The ALJ also found non-severe impairments of facial numbness, sciatica with low back pain, vertigo, a calcified granuloma, gastroenteritis, obstructive sleep apnea, ankle sprain, sinusitis, urinary tract infection, otalgia, hypertension, right flank pain, infected bite wound, impacted cerumen, cellulitis, and hyperlipidemia or dyslipidemia. (Id.).

At Step Three, the ALJ found that Willie's impairments did not meet or medically equal the severity of one of the impairments in the Listings. (Dkt. 18-8 at 14-15, R. 579-80). In reaching this determination, the ALJ considered Listings 1.02 (major dysfunction of a joint), 3.02 (chronic respiratory disorders), 3.03 (asthma), 4.02 (chronic heart failure), 4.12 (peripheral arterial disease), 11.14 (peripheral neuropathy), 14.09 (inflammatory arthritis); SSR 14-2p (diabetes mellitus); and SSR 19-2p (obesity). (Id. at 15-17, R. 580-82).

After Step Three but before Step Four, the ALJ found that Willie had the residual functional capacity ("RFC") to perform sedentary work, with the following

7

exertional and postural limitations: lifting, carrying, pushing, and pulling ten pounds occasionally and less than ten pounds frequently; stand or walk two hours and sit for six hours in an eight-hour workday; occasionally balance, crouch, crawl, kneel, and climb stairs or ramps; frequently handle and finger bilaterally; never work around unprotected heights or unguarded, dangerous, and moving machinery; no climbing ladders, ropes, and scaffolds; no exposure to temperature extremes or unusually high levels of humidity or wetness; and occasional exposure to dust or mold. (Dkt. 18-8 at 17-21, R. 582-86).

At Step Four, the ALJ concluded that Willie is unable to perform any past relevant work. (Dkt. 18-8 at 21, R. 586). At Step Five, relying on the vocational expert's testimony, the ALJ determined that, considering Willie's age, education, work experience, and residual functional capacity, he was capable of performing other work. (Dkt. 18-8 at 22-23, R. 587-88). The ALJ thus concluded that Willie was not disabled. (Id. at 23, R. 588).

IV.  ANALYSIS

In support of his request for remand, Willie argues the ALJ's residual functional capacity assessment is not supported by substantial evidence. (Dkt. 20 at 3, 9-10). Specifically, Plaintiff maintains the ALJ erred by failing to obtain a medical interpretation of the dynamometer testing results as ordered by Judge Cherry. (Id.). *Garth v. Berryhill*, No. 2:16-CV-428-PRC, 2018 WL 5307231, at *7 (N.D. Ind. Oct. 26, 2018).

8

In response, the Commissioner contends that Plaintiff misinterprets Judge Cherry's Order. (Dkt. 21 at 11-12, 18-19). The Commissioner maintains that Judge Cherry remanded the case because the ALJ failed to build a logical bridge between the evidence cited and her finding that Willie could perform frequent handling and fingering bilaterally, despite his carpal tunnel syndrome. (Id.). The Commissioner maintains that the ALJ built an accurate and logical bridge from the evidence to his conclusion when he determined Willie had the RFC to perform frequent handling or fingering with both upper extremities. (Id. at 10-18). The Commissioner also asserts that the ALJ's discussion of Plaintiff's medical records, medical expert testimony, and the medical source opinions constitute substantial evidence supporting the ALJ's RFC findings. (Id.).

In reply, Willie asserts that the Court would not have pointed out the first ALJ's failure to cite any medical interpretation of the dynamometer results if the Court did not intend for the ALJ to correct this omission on remand. (Dkt. 22 at 3). Plaintiff also contends "[i]t is undisputed that neither the first nor the second ALJ cited any medical interpretation of the dynamometer testing results." (Id. 22 at 2).

On October 26, 2018, Judge Cherry issued an Order remanding ALJ Rebecca LaRiccia's February 2015 decision denying Plaintiff disability insurance benefits and supplemental security income. *Garth v. Berryhill*, No. 2:16-CV-428-PRC, 2018 WL 5307231, at *1 (N.D. Ind. Oct. 26, 2018). In reviewing ALJ LaRiccia's RFC assessment, Judge Cherry stated:

> The evidence cited and not cited by the ALJ regarding Plaintiff's carpel tunnel syndrome is troubling. The November 2010 incident occurred

9

> approximately 22 months prior to the alleged disability onset date and may not be indicative of his condition on the onset date. The ALJ does not cite to any medical interpretation of the dynamometer testing results, and the ALJ is not qualified to determine on her own what this result means. *See Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014). The ability to write a short note says little about the ability to perform tasks with one's hands at the Social Security Administration's "frequent" level. One of Plaintiff's doctors considered Plaintiff's carpel tunnel syndrome to be severe enough to discuss carpel tunnel release surgery, which the ALJ diminishes by noting that Plaintiff ultimately decided not to pursue this option.
>
> While the evidence suggests that Plaintiff retains some ability to handle and finger despite his carpal tunnel syndrome, the ALJ has not adequately explained how the evidence that she cites shows Plaintiff to be able to perform these activities "frequently" as defined by the regulations. Furthermore, the ALJ does not cite the findings of both consulting medical examiners, Dr. Smejkal and Dr Bautista, who opined that Plaintiff could "button, zip, and pick up coins but not repetitive." (AR 431, 485).
>
> There is no logical bridge connecting the evidence cited by the ALJ and her finding that Plaintiff can handle and finger for over five hours in an eight hour work day. This finding is further called into question by the findings of the Social Security Administration's consulting examiners that Plaintiff cannot repetitively button, zip, and pick up coins. Remand is required on this basis.

*Garth*, 2018 WL 5307231, at *7.

Judge Cherry identified several errors in the ALJ's residual functional capacity analysis, including: (1) relying on statements in a November 15, 2010 medical record that, given its date, may not have been indicative of Plaintiff's condition on the onset date; (2) referencing dynamometer testing without any medical interpretation of the testing results; (3) referencing an activity (*i.e.*, the ability to write a short note) that says little about the capability of performing frequent handling and fingering; and (4) failing to reference the findings of

10

consulting medical examiners, Dr. Smejkal and Dr. Bautista. *Garth*, 2018 WL 5307231, at *7. At no point, however, did Judge Cherry mandate the ALJ, on remand, to obtain a medical interpretation of the dynamometer testing results. *Id.* Instead, Judge Cherry remanded the case because the ALJ's RFC analysis failed to build a logical bridge connecting the evidence cited by the ALJ and her conclusion regarding Willie's ability to finger and handle for over five hours in an eight-hour workday. *Id.*

On remand, the new ALJ spent an extensive amount of time assessing the record evidence related to Willie's carpal tunnel syndrome, and specifically states the reasons why he found Willie capable of frequently handling and fingering bilaterally despite his carpal tunnel syndrome. (Dkt. 18-8 at 17-21, R.582-86). While it is true that the ALJ did not mention the dynamometer testing results, the ALJ built a logical bridge from the evidence to his RFC assessment.

The Seventh Circuit has defined the RFC as "the claimant's ability to do physical and mental work activities on a regular and continuing basis despite limitations from [his] impairments." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). It is the most the claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). When determining the RFC, the Regulations and Seventh Circuit case law make clear that an ALJ's RFC assessment must incorporate all of a claimant's functional limitations supported by the medical record. *See Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) ("When determining a claimant's RFC, the ALJ must consider the

combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment."); *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019); *see also* SSR 96-8p; 20 C.F.R. § 404.1545(a). Furthermore, if an ALJ relies on testimony from a vocational expert ("VE"), the hypothetical question the ALJ poses to the VE "must incorporate all of the claimant's limitations supported by the medical evidence in the record." *Varga,* 794 F.3d at 813.

      To reach his conclusion, the ALJ cited to Plaintiff's own testimony and reports to his doctors, the absence of consistent treatment, exam findings demonstrating full range of motion in the upper extremities, conservative treatment, activities of daily living, and the decision of the state agency reviewing physicians and the testifying medical expert. (Dkt. 18-8 at 17-21, R. 582-86). Specifically, the ALJ points to Plaintiff's subjective complaints regarding his carpal tunnel syndrome, including pain and numbness in both wrists, and difficulty using his hands and typing, (Dkt. 18-8 at 17-18, 20, 56-57, 62-67, R. 582-83, 585, 621-22, 627-32; Dkt. 18-6 at 41, R. 298; Dkt. 18-7 at 78-97, R. 407-426), compared to medical reports demonstrating conservative and sporadic treatment, full range of motion in lower and upper extremities, ability to perform some fine manipulation, and lack of documented neurological deficits. (Dkt. 18-8 at 18-19, R. 583-84, Dkt. 18-7 at 50-54, 58-97, 101-02, 155-56, R. 379-83, 387-426, 430-31, 484-85; Dkt. 18-13 at 32-65, R. 850-83). The ALJ also considered the decisions of the State Agency reviewing physicians and the testifying medical expert. (Dkt. 18-8 at 20-21, R. 585-86).

The ALJ gave great weight to the State Agency medical consultants, Dr. Mangala Hasanadka and Dr. M. Brill, who opined that Willie was limited to frequent handling with bilateral upper extremities. (Dkt. 18-8 at 20, R. 585; Dkt. 18-3 at 26, 35, 47-48, 57-58, R. 124, 133, 145-46, 155-56). The ALJ also gave great weight to the opinion of the testifying medical expert, Dr. Levine, who opined that Willie could perform keyboarding activities or repetitive manipulative activities of the wrist for 30 minutes at a time before taking a one to two minute break. (Dkt. 18-8 at 20, R. 585; Dkt. 18-8 at 72-73, R. 637-38).

Although the Plaintiff is correct insofar as the ALJ did not address every piece of evidence, such as the dynamometer testing results, (Dkt. 20 at 2), the ALJ is not required to address every piece of evidence and, instead, must simply trace the path of his reasoning from the evidence to his conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012). The ALJ has done so here. The Court finds the ALJ's RFC assessment and corresponding hypothetical questions to the vocational expert sufficiently address Willie's physical limitations with fingering and handling, and thus, remand on this issue is not warranted.

V. **CONCLUSION**

For the reasons detailed herein, the Court **AFFIRMS** the ALJ's decision denying the Plaintiff benefits. Final judgment will issue accordingly.

So ORDERED.

Date: 3/25/2022

*Doris L. Pryor*
Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

13

Distribution:

All ECF-registered counsel of record via email